COMMONWEALTH *vs.* JOHN C. BILLINGS.

No. 95-P-1543.

Middlesex. October 8, 1996. - February 27, 1997.

Present: WARNER, C.J., LAURENCE, & FLANNERY, JJ.

*Search and Seizure,* Expectation of privacy. *Constitutional Law,* Search and seizure, Privacy. *Privacy.*

A police officer who asked a suspect to show the soles of his sneakers during a noncustodial interview and who observed the tread thereon did not conduct a search under the Fourth Amendment to the United States Constitution, where the suspect had no reasonable expectation of privacy in the soles of his shoes. [264-266]

INDICTMENTS found and returned in the Superior Court Department on May 21, 1992.

A pretrial motion to suppress evidence was heard by *Catherine A. White,* J., and the cases were tried before *Elizabeth J. Dolan,* J.

*Carlo A. Obligato,* Committee for Public Counsel Services, for the defendant.

*Carlene A. Pennell,* Assistant District Attorney, for the Commonwealth.

WARNER, C.J. A jury convicted the defendant of armed assault with intent to murder, two counts of assault and battery by means of a dangerous weapon (door frame and shod foot), and assault and battery.[1] The only issue on appeal is whether the trial judge erroneously permitted a police detective to testify regarding his observations of tread patterns appearing on the soles of the defendant's sneakers. The defendant contends that the observations were the result of an illegal search, and that the admission of the testimony violated his

---

[1]The assault and battery conviction was placed on file.

rights under the Fourth Amendment to the United States Constitution.[2] We affirm the convictions.

The issue at trial was the identity of the assailant. The victim, Joseph Mulhearn, had been severely beaten during the early morning hours of April 17, 1992, and left in a vegetative state. On his right shoulder was an impression resembling the herring bone pattern of a sneaker sole.

Circumstantial evidence connected the defendant to the assault. There was testimony that the defendant, along with Eric Newlon[3] and others, had given Mulhearn money to buy cocaine the evening before the attack; that Mulhearn failed to deliver the drugs, and that the defendant and Newlon, believing that Mulhearn had cheated them, indicated that they were going to find him, get their money back, and "get" the victim. During the attack, which occurred in the apartment building where the victim lived, neighbors heard two voices threatening Mulhearn about money owed them. Two witnesses who caught glimpses of the melee described one attacker as having long dark or dirty blonde hair and wearing a black or brown leather or leather-like jacket. A witness who had been with the defendant earlier in the evening described him as having shoulder length hair and wearing dark clothing and a baseball cap. A baseball cap was found on the floor of the victim's blood spattered bathroom. Additional physical evidence connected the defendant to the attack,[4] but no eyewitness could positively identify him as the assailant.

Framingham police Detective Lawrence Hendry testified at trial that he had conducted a noncustodial interview with the defendant at the Framingham police station on April 21,

[2]A footnote in the defendant's brief on appeal adverts to art. 14 of the Massachusetts Declaration of Rights. At trial, however, the defendant made no claim that his rights under art. 14 had been violated. He may not now raise that argument on appeal. *Commonwealth* v. *Lett*, 393 Mass 141, 144 (1984).

[3]Newlon was charged as a codefendant and pleaded guilty to assault and battery. The Commonwealth nol prossed the remaining charges against him.

[4]Two of the defendant's fingerprints and a hair sample with the same microscopic characteristics as the defendant's were found at the crime scene. However, the defendant told a police detective that he knew Mulhearn and had been in his apartment on several occasions. Blood was found on two of the defendant's black jackets. The blood on one of the jackets was identified as human blood, but was never typed.

1992. He noted cuts and bruises on the defendant's face and hands and asked the defendant to lift up his foot so that he could see the bottom of the defendant's sneakers. The defendant complied. Hendry observed that the treads had a herring bone pattern, similar to the pattern of the bruise on the victim's body.

Prior to trial, the defendant moved to suppress evidence that had been seized on April 21, the day of the interview at the police station. The motion judge made the following findings. The defendant voluntarily accompanied Detective Hendry to the police station where he was told that an incident at Mulhearn's was being investigated. Hendry described what had occurred and questioned the defendant about his activities and whereabouts the night of April 16. The defendant was asked about cuts and bruises on his face and hands. He was not read his Miranda rights during the interview. Hendry noticed no signs of intoxication, but the defendant testified at the motion hearing[5] that he had been drinking beer and vodka during the day of the interview and was "pretty drunk" at the time of the interview. The judge found that he had injected a bag of heroin earlier that day.

Several times during the interview, the defendant was asked to remove his sneakers and give them to the police. He initially refused, but finally did so. At the close of the interview the police obtained the defendant's reluctantly given written consent to have his residence searched. The police conducted the search immediately thereafter and seized additional physical evidence from the defendant's room. The defendant was arrested at some point after the search.

The defendant argued in his motion to suppress that his consent to the searches and seizures had not been voluntary. The motion judge agreed, on the grounds that the defendant had been intoxicated during the interview, had been in the presence of numerous police officers, and had been unaware of his right to refuse his consent. The judge ordered the physical evidence seized on April 21 suppressed. Neither the suppression motion nor the motion judge's memorandum of decision addressed the question whether Hendry could testify about his observations of the defendant's sneaker treads. The Commonwealth did not appeal the motion judge's decision.

[5]Statements of testimony are inappropriate in judge's findings.

At trial, the Commonwealth moved in limine to allow Hendry to so testify. A voir dire hearing was held, at which Hendry testified that he had asked the defendant to show him the soles of his sneakers and had observed their herring bone pattern prior to seizing the sneakers. The trial judge allowed the motion on the ground that Hendry's observation of the soles of the defendant's sneakers did not constitute a search.

The defendant contends that the admission of Hendry's testimony regarding the sneaker treads was reversible error. Without this testimony, he argues, the evidence would have been unlikely to lead to a conviction. It is true that Hendry's testimony may well have had a strong impact on the jury, but there was no error in its admission. Hendry's testimony regarding his observations was not tainted by the illegal seizure of the defendant's sneakers, because the observations were made before the seizure. *Commonwealth* v. *Wilson*, 38 Mass. App. Ct. 680, 682-683 (1995), and cases cited.[6] Moreover, we agree with the trial judge that the police activity involved in asking the defendant to show the soles of his sneakers and observing the treads did not constitute a search under the Fourth Amendment.[7]

For purposes of the Fourth Amendment, "whether a particular instance of government scrutiny, unauthorized by a warrant, constitutes an unreasonable search under constitutional standards, depends on whether the person had a 'reasonable expectation of privacy,' *Commonwealth* v. *Panetti*, [406 Mass. 230], 231 [(1989)], quoting *California* v. *Ciraolo*, 476 U.S. 207, 211 (1986), that was violated by the government." *Commonwealth* v. *One 1985 Ford Thunderbird Auto.*, 416 Mass. 603, 607 (1993).

In order to determine whether a search occurred, we ask whether the defendant had a subjective expectation of privacy in the subject of government scrutiny and "whether society is

---

[6]The defendant attacks Detective Hendry's credibility on this point. However, it was for the trial judge, not this court, to determine the credibility of the witness. *Commonwealth* v. *Melvin*, 399 Mass. 201, 204 (1987), citing *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980).

[7]As the trial judge found, the defendant's lifting of his foot to show Hendry the bottom of his sneaker was nontestimonial. Therefore the protections of the Fifth Amendment to the United States Constitution do not apply here. See *Commonwealth* v. *Nadworny*, 396 Mass. 342, 363 (1985), and cases cited. See also *Commonwealth* v. *Billups*, 13 Mass. App. Ct. 963, 964 (1982), cert. denied, 464 U.S. 898 (1983).

willing to recognize that expectation as 'reasonable' (*California* v. *Ciraolo*, [476 U.S. at 211]), 'justifiable,' or 'legitimate' (*Smith* v. *Maryland*, 442 U.S. 735, 740 [1979]). See *Commonwealth* v. *D'Onofrio*, [396 Mass 711, 714 (1986)]." *Commonwealth* v. *Panetti*, 406 Mass. at 231-232.

"What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz* v. *United States*, 389 U.S. 347, 351-352 (1967) (citations omitted). Thus, voice exemplars are not protected by the Fourth Amendment because "[t]he physical characteristics of a person's voice . . . are constantly exposed to the public. Like a man's facial characteristics, or handwriting, his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice. . . ." *United States* v. *Dionisio*, 410 U.S. 1, 14-15 (1973). Likewise, handwriting exemplars are not protected. *United States* v. *Mara*, 410 U.S. 19, 21-22 (1973). *Commonwealth* v. *Lima*, 29 Mass. App. Ct. 490, 497 (1990). Nor does the disclosure of physical characteristics in a lineup implicate the Fourth Amendment. *In Re Melvin*, 550 F.2d 674, 675-676 (1st Cir. 1977), following *Dionisio* and *Mara*. *Commonwealth* v. *Doe*, 408 Mass. 764, 767 (1990). In contrast, the taking of fingernail scrapings "went beyond mere 'physical characteristics . . . constantly exposed to the public,' *United States* v. *Dionisio, supra* at 14, and constituted the type of 'severe, though brief, intrusion upon cherished personal security' that is subject to constitutional scrutiny. *Terry* v. *Ohio*, [392 U. S. 1, 24-25 (1977)]." *Cupp* v. *Murphy*, 412 U.S. 291, 295 (1973).

The physical characteristics of the soles of a person's shoes, like one's voice, face, and handwriting, are constantly exposed to the public. Footprints on the ground are visible for all to see. People display the soles of their shoes when they cross their legs, climb stairs, or put their feet up on furniture. Viewing the soles of a person's shoes does not "constitute[ ] the type of 'severe, though brief, intrusion upon cherished personal security' that is subject to constitutional scrutiny. *Terry* v. *Ohio, supra* at 24-25." *Cupp* v. *Murphy*, 412 U.S. at 295.

While the defendant may have had a subjective expectation

of privacy in the appearance of his sneaker treads, we hold that there was no search within the meaning of the Fourth Amendment because we do not recognize such an expectation as reasonable. See *Commonwealth* v. *D'Onofrio*, 396 Mass. at 714.

Courts in other jurisdictions that have addressed this issue have similarly concluded that observing the soles of a person's shoes does not constitute a search. See *United States* v. *Ferri*, 778 F.2d 985, 996 (3d Cir. 1985) ("[I]t is not unusual to expose one's feet to the public. . . . Nor does the forced production of one's feet and shoes involve the type of 'humiliating experience' at issue in *Terry*"); *State* v. *Coleman*, 593 P.2d 684, 686-687 (Ariz. App. 1978) (The defendant had no reasonable expectation of privacy in the physical characteristics of the soles of his shoes); *State* v. *Hiassen*, 110 Idaho 608, 610 (App. 1986) ("There is no reasonable expectation of privacy in the appearance of the soles of one's shoes"); *State* v. *Bates*, 202 N.J. Super 416, 427 (1985) ("The soles of a person's shoes, and especially the pattern on the soles of a person's shoes, are constantly exposed for public view, such as when we kneel to pray, when we lift our feet to walk or run, when we cross our legs or prop them up on a table or chair, when we remove our shoes and leave them lying idly on the floor, or . . . when we leave footprints in the mud or dirt. . . ."); *State* v. *Selvidge*, 635 P.2d 736, 740 (Wash. App. 1981) (The defendants' shoe tread patterns are "shown to the world with every footstep").

*Judgments affirmed.*