COMMONWEALTH *vs.* RONALD PODGURSKI. No. 96-P-1078. March 20, 1998. *Search and Seizure,* Consent, Plain view. *Constitutional Law,* Search and seizure. *Practice, Criminal,* Motion to suppress, Comment by prosecutor, Instructions to jury. *Evidence,* Firearm. *Controlled Substances.*

The defendant was convicted of trafficking in cocaine of a net weight in excess of twenty-eight grams, but less than 100 grams. G. L. c. 94C, § 32E(*b*)(2). On appeal, he argues that the motion judge improperly denied his motion to suppress. He also asserts that, at trial, admission in evidence that he possessed guns was error, that a comment made by the prosecutor during closing argument was unduly prejudicial, and that jury instructions on "trafficking" were improper. We affirm the conviction.

1. *Motion to suppress.* The defendant argues that the police conducted an illegal warrantless search of his home and bedroom under the pretext of a G. L. c. 209A restraining order. We summarize the judge's findings of fact.

In the afternoon of May 6, 1994, the defendant's wife went to the police station. At that time, she, the defendant, and their children, were living together. She told the police that she needed to leave her husband because he was using drugs constantly, he had threatened to "hunt her down and kill her" if she left, and that he kept guns in their bedroom. In response, the police helped the defendant's wife obtain an emergency abuse prevention order (hereinafter "209A order"), see G. L. c. 209A, § 5 (as amended through St. 1983, c. 678, § 4), and room at a shelter. The 209A order required the defendant to surrender all firearms in his possession. The defendant does not challenge the validity of the 209A order in any respect.

After returning to her home to retrieve her children, the wife entered the shelter. Approximately three hours later, several officers went to the defendant's residence to serve the 209A order. Upon arrival, the police saw two men approach and enter the defendant's house. The police followed them into the house, arriving one minute later. Without knocking, the police entered the defendant's home by opening the unlocked front door. Once inside, they spoke with the defendant briefly, and explained the 209A order to him. During this discussion, the defendant indicated that he had guns in the bedroom. He then went to the bedroom and closed the door behind him. The police immediately entered the bedroom and observed the defendant grab a packet from the dresser in an attempt to conceal it. The police recognized that the packet contained cocaine, and seized it.

The motion judge denied the defendant's motion to suppress, concluding that the defendant's wife consented to the search, that exigent circumstances justified the search, and that there was no authority for the proposition that a warrant was necessary in order to serve a 209A order. The judge found that the police entered the bedroom because they reasonably believed the defendant was prone to violence, and because they were required to confiscate the guns. In reviewing the denial of a motion to suppress, we accept the judge's findings of fact absent clear error. "[T]he ultimate conclusion to be drawn from the fact[s] developed at the hearing is a matter for our review, particularly where the conclusion is of constitutional dimension." *Commonwealth* v. *Accaputo*, 380 Mass. 435, 448 n.18 (1980).

Article 14 of the Massachusetts Declaration of Rights, and the Fourth and Fifth Amendments to the United States Constitution, protect individuals from unreasonable searches. An unconstitutional search occurs when government action constitutes a meaningful interference with an expectation of privacy that society is prepared to consider reasonable. *Commonwealth* v. *Billings*, 42 Mass. App. Ct. 261, 264 (1997). Under this rule, government action inside a home without a warrant is presumptively unreasonable, unless it falls within an exception to the warrant requirement. Assuming arguendo that a search occurred, it fell within the consent exception to the warrant requirement.

The motion judge ruled that the defendant's wife consented to the search. The defendant argues that his wife's consent was not valid, and if it was valid, that the bedroom search exceeded the scope of the authorized search.[1] Family members who live in a home together may validly consent to a search of that home. See *Commonwealth* v. *Ortiz*, 422 Mass. 64, 70 (1996). Although temporarily housed in a shelter, the defendant's wife lived in the house and could consent to its search. See *Commonwealth* v. *Sanna*, 424 Mass. 92, 97-98 (1997) (defendant's father consented to search); *United States* v. *Matlock*, 415 U.S. 164, 170-172 (1974) (defendant's spouse may consent to search if spouse has a "sufficient relationship to the premises"). The relevant question then becomes whether she did, in fact, consent.

When the Commonwealth relies on consent as the basis for a warrantless

---

[1]The defendant cites no authority for his assertion that, because his wife was not present when the police served the order, and he was, her consent was invalid. Accordingly we do not address this claim. But see *Commonwealth* v. *Ploude, ante* 137, 140-141 (1998) (building coowner's consent to search valid, even when defendant-owner refused permission).

search, "it must demonstrate consent unfettered by coercion, express or implied . . . [which is] something more than mere acquiescence to a claim of lawful authority. Voluntariness of consent is a question of fact to be determined in the circumstances of each case." *Commonwealth* v. *Robinson*, 399 Mass. 209, 217 (1987) (citations omitted). In the present case, there was ample evidence to support the motion judge's finding that the defendant's wife knew the officers would go to her house, and that she voluntarily consented to their entry. See *Commonwealth* v. *Cantalupo*, 380 Mass. 173, 177 (1980) (ample evidence of consent where the defendant initiated the search by opening his jacket, saying "search me" and making a gesture indicating an invitation to the officers to search him). The defendant's wife initiated contact with the police, and formally applied for their assistance. She told them there were weapons in the bedroom, implicitly because she wanted the police to remove them. She also arranged to be out of the house before the police arrived to serve the order, strongly implying that she knew they would enter her home when they served it. For the same reasons, the officers' search of the bedroom fell within the search consented to by the wife. See *Commonwealth* v. *Rexach*, 20 Mass. App. Ct. 919, 919-920 (1985). Accordingly, the search was constitutional under the consent exception to the warrant requirement.[2]

Once the police were legitimately inside the bedroom pursuant to the consent exception to the warrant requirement, they saw a cocaine packet and seized it. Under the plain-view doctrine, the cocaine was lawfully seized. See *Commonwealth* v. *Blake*, 23 Mass. App. Ct. 456, 463-464 (1987) (that trooper suspected a scale might be found in the glove compartment did not taint his sighting it from a lawful position). It follows that the defendant's suppression motion was properly denied. Accordingly, we need not consider whether serving a 209A order constitutes a search. See *Commonwealth* v. *Canavan*, 40 Mass. App. Ct. 642, 645 (1996) (discussing community caretaking doctrine).

There is no merit to the defendant's assertion that his description of the guns' location occurred while he was in custody. See G. L. c. 209A, § 3A (order is civil in nature). His claim that the statements should be suppressed fails.

2. *Guns in evidence.* At trial, Officer Callery testified that the 209A order authorized him to remove the guns the defendant kept in his bedroom.[3] The jury were also informed that the defendant invited the police to follow him into the bedroom in order to remove the guns, and that seven guns were removed.[4] The defendant argues that the admission of evidence of the guns (which were identified by manufacturer and caliber) constituted "bad act" evidence, which impermissibly suggested to the jury that the defendant was

---

[2]Although unnecessary to the disposition of this case, we add that the police officers' entry into the bedroom was justified by the exception for exigent circumstances because the officers reasonably followed the defendant to prevent violence. See *Commonwealth* v. *Rexach*, 20 Mass. App. Ct. at 919-920.

[3]The Commonwealth's citation to G. L. c. 209A, § 3B, is inappropriate as that section was not effective until July 1, 1994. St. 1994, c. 24, §§ 6 & 11.

[4]This testimony differed from the motion judge's findings of fact in his order denying the motion to suppress.

violent, and necessitates reversal. We review for prejudicial error. See *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993).

It is well-established that admitting "evidence of a defendant's criminal or wrongful behavior to show a tendency of bad character or propensity to commit the crime charged [is prohibited]." *Commonwealth* v. *Leonardi*, 413 Mass. 757, 763 (1992). In the present case, however, there is simply no evidence upon which the jury could have concluded that the defendant was not legally permitted to possess the weapons, or that the weapons, by virtue of their manufacturer, or caliber, were inherently unlawful. Consequently, evidence that the defendant owned guns was not evidence of criminal or wrongful behavior. The gun evidence was relevant to explain the police officers' presence in the defendant's bedroom, and their opportunity to observe the defendant grab a small package from his dresser in an attempt to conceal it. We find no error in admitting evidence of the guns' existence at trial. See *Commonwealth* v. *Ali*, 43 Mass. App. Ct. 549, 563-564 (1997).

3. *Prosecutor's comments.* During closing argument, the prosecutor posed the following question, "When the police arrived to serve that order, were these two gentlemen at the house . . . were they paying a social visit?" The defendant argues that this comment was improper because it implies the men were present to buy drugs, and because it was not based upon any evidence admitted at trial. We review for prejudicial error. See *Commonwealth* v. *Daggett*, 416 Mass. at 352 n.5.

At trial, Officer Callery testified that two men were standing in the doorway to the defendant's home, speaking with the defendant's mother, when he arrived to serve the 209A order. He stated that they lingered outside until the defendant was arrested, at which time they left.[5] Later, the defendant's wife testified that the defendant expected to receive a cocaine delivery on the night the police served the 209A order.

A prosecutor must limit comment in closing statement to "the evidence and the fair inferences that can be drawn from the evidence." *Commonwealth* v. *Ferreira*, 381 Mass. 306, 316 (1980). Counsel may, however, "attempt to assist the jury in their task of analyzing, evaluating, and applying evidence. Such assistance includes suggestions by counsel as to what conclusions the jury should draw from the evidence." *Ibid.* In this case, the prosecutor's comment was based upon evidence admitted at trial. Given that evidence, described above, the prosecutor's suggestion was permissible.

4. *Jury instructions.* At the conclusion of the evidence, the judge gave a standard instruction, and — in response to a question from the jury — supplemental instructions, on trafficking. The defendant argues that the instructions were improper because they did not highlight the Commonwealth's obligation to prove that the defendant intentionally possessed at least 28 grams of cocaine. At trial, the defendant's wife testified that she dumped some inositol (a cutting agent) into the defendant's cocaine. The defendant asserts that the jury should have been

---

[5]This testimony differed from the motion judge's findings of fact in his order denying the motion to suppress. He found that the two men entered the house.

told that he could only intentionally possess the quantity of cocaine he had in the bag before his wife added the unknown quantity of inositol, because he was unaware of any such addition.[6] We review for prejudicial error. See *Commonwealth* v. *Daggett*, 416 Mass. at 352 n.5.

During the initial trafficking charge, the judge correctly stated that the Commonwealth had to prove beyond a reasonable doubt "that the defendant had consciously, voluntarily and purposefully possessed the controlled substance." In addition, in the supplemental instructions, the judge repeated the distinction between "trafficking" and the lesser included offense of "possession with intent to distribute," precisely because the amount of cocaine that the defendant possessed was at issue. See *Commonwealth* v. *Tata*, 28 Mass. App. Ct. 23, 26 (1989). The judge explained that, in order to find the defendant guilty of trafficking, the jury had to conclude that the controlled substance weighed 28 grams or more. We conclude that these instructions were sufficient to alert the jury to their obligation to determine how much controlled substance the defendant knowingly possessed. See *Commonwealth* v. *Wills*, 398 Mass. 768, 780 (1986) (defendant not entitled to any particular instruction).

*Judgment affirmed.*

*James H. Budreau* for the defendant.

*Stephanie M. Glennon*, Assistant District Attorney, for the Commonwealth.

---

[6]The trafficking statute requires that the net weight of the controlled substance, or "any *mixture* thereof," be twenty-eight grams or more. G. L. c. 94C, § 32E(*b*)(2) (emphasis supplied). Thus, the weight or quantity of the cutting agent that the defendant possessed would be irrelevant until it was mixed into the controlled substance, see *Commonwealth* v. *Nutile*, 31 Mass. App. Ct. 614, 624 (1991), and until the defendant knew he possessed the mixture, but not necessarily the mixture's weight. See *Commonwealth* v. *Rodriguez*, 415 Mass. 447, 452-454 (1993).