# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 38017

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Opinion No. 33 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 19, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TIMOTHY EUGENE WRIGHT, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Jon J. Shindurling, District Judge.

Judgment of conviction for robbery, vacated and case remanded.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant. Spencer J. Hahn argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

PERRY, Judge Pro Tem

Timothy Eugene Wright appeals from his judgment of conviction for robbery, arguing several violations of his constitutional right to a fair trial. Specifically, Wright asserts that: (1) the district court erred when it placed him in restraints during trial and alerted the jury to that fact; (2) the prosecutor committed misconduct by eliciting testimony that Wright refused to consent to a search; and (3) the district court erred in allowing irrelevant evidence of prior acts to be introduced at trial. Although Wright asserts these errors individually warrant a new trial, in the alternative, Wright contends the errors throughout the proceedings deprived him of his right to a fair trial under the doctrine of cumulative error. We vacate the judgment and remand for a new trial.

1

# I.

## FACTS AND PROCEDURE

Wright, along with two other men, was arrested and charged for suspected involvement in the armed robbery of a loan store. Two men entered the loan store, threatened employees at gunpoint, stole over $2,000 in cash, and then fled in a vehicle driven by a third man. None of the victims of the robbery positively identified Wright, but a considerable amount of circumstantial evidence implicated him as one of the two men who entered the loan store. This evidence included: a witness's description of one of the robbers matching Wright's physical characteristics; a victim's positive identification of Wright's brother as the other robber; Wright's presence as a passenger, along with his identified brother, in a vehicle pulled over by police shortly after the robbery; shoes, worn by Wright, with treads matching footprints left at the scene of the robbery; Wright's and his two associates' possession of bills in quantity and denominations matching the stolen money; ski masks consistent with those worn by the robbers found in the vehicle in which Wright was a passenger; and other circumstantial evidence. Along with this evidence presented at Wright's trial, the State also showed, over Wright's objection on grounds of relevance, that he and the two other men implicated in the robbery were in the area of the robbery on the day prior to the crime. Additionally, during its opening and closing statements and through the testimony of two witnesses, the State brought up the fact that Wright refused to consent to having the soles of his shoes photographed by investigators.

Wright was initially represented by counsel, but on the second day of the four-day trial, he sought permission from the district court to discharge his attorney and proceed pro se. The district court held a short hearing, out of the presence of the jury, and granted Wright's request. Just prior to the hearing on the discharging of counsel, the district court had ordered the use of restraints on Wright because of an incident with a marshal outside of the courtroom during a court recess. After reseating the jurors, the district court alerted the jury to the fact that Wright was restrained and would remain so until he maintained self-control. It is unclear from the record whether Wright continued to be restrained throughout the remainder of proceedings. At the close of trial, the jury found Wright guilty of one count of robbery, Idaho Code §§ 18-6501, 18-6503. The district court entered a judgment of conviction and imposed a unified life sentence, with fifteen years determinate. Wright timely appeals. He asserts each of the following errors violated his constitutional right to a fair trial and warrants a new trial: (1) the

use of restraints and the jury's awareness of them; (2) prosecutorial misconduct in disclosing Wright's refusal to consent to a search; and (3) the use of irrelevant prior act evidence. If no error alone warrants retrial, Wright contends that the cumulative error doctrine should apply.

## II.

## DISCUSSION

### A.     Use of Restraints

As a preliminary matter, the State asserts that Wright failed to object to the restraints on any ground and, without an objection in the trial court, fails to show fundamental error under the *Perry*[1] analysis. In a situation involving the use of restraints on a defendant, a defendant's objection should be made before jurors arrive or after they have been excused from the court. *State v. Crawford*, 99 Idaho 87, 94, 577 P.2d 1135, 1142 (1978). Idaho cases hold that an objection is preserved for appellate review, without resort to fundamental error analysis, if either the specific ground for the objection is clearly stated or the basis of the objection is apparent from the context. *E.g. State v. Sheahan*, 139 Idaho 267, 277, 77 P.3d 956, 966 (2003). To raise an issue on appeal also requires an adverse ruling from the trial court that forms the basis for assignment of error. *State v. Huntsman*, 146 Idaho 580, 585, 199 P.3d 155, 160 (Ct. App. 2008).

We conclude the issue of the use of restraints in this case was preserved for appellate review. After Wright had been restrained, the district court held a brief hearing. During the hearing, the district court noted on the record that Wright had been placed in restraints, but the hearing primarily related to Wright's understanding of both the right to counsel and the disadvantages of proceeding pro se. After allowing Wright to discharge his attorney, the district court asked whether the State or Wright needed to address anything else before returning the jury. Wright asked to recall the State's first witness for cross-examination, and the district court granted the request. The district court then asked the bailiff to return the jury, but Wright interjected asking, "May I have these off, sir?" Wright argues, and the State does not deny, that the request referred to the restraints. From the context, it is apparent Wright was challenging, or objecting to, the use of restraints with the jury present. Furthermore, the request to remove the restraints required the district court to rule on the issue. Having already ordered the use of restraints, the district court gave a definitive answer on the request to reconsider its order: "No. You show me after awhile here you're doing okay and I'll take them off . . . ." The district court

---

[1]     *See State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010).

made its position clear and no further objection by Wright was required in order to preserve the issue for appeal.

On appeal, a trial court's decision to place a defendant in restraints during a jury trial is reviewed for an abuse of discretion. *State v. Miller*, 131 Idaho 288, 292-93, 955 P.2d 603, 607-08 (Ct. App. 1997); *see also Deck v. Missouri*, 544 U.S. 622, 629 (2005). In looking at the trial court's decision to restrain a defendant, this Court must determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Miller*, 131 Idaho at 292, 955 P.2d at 607. Wright contends the district court abused its discretion when it ordered that he be placed in restraints in three ways. First, there was no description of the incident that took place outside of the courtroom and no finding by the district court that the restraints were necessary for safety concerns or the preservation of judicial decorum. Wright asserts the use of restraints could permissibly be ordered only after an evidentiary hearing. Next, Wright argues that even if the use of restraints was justified, the district court erred by informing the jury that Wright was in restraints. Finally, Wright urges that the district court erred by not using the least restrictive and the least visible restraints available.

**1.      Failure to provide an evidentiary hearing or make a record**

"[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck*, 544 U.S. at 629; *see also Estelle v. Williams*, 425 U.S. 501, 505 (1976) (recognizing shackles should only be used when necessary to control a defendant); *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970) (holding a defendant may be restrained to maintain the decorum in a courtroom). A criminal defendant may be restrained during trial only in the "presence of a special need." *Deck*, 544 U.S. at 626. Interpreting this, the Idaho Supreme Court held the Due Process Clauses of both the United States and Idaho Constitutions prohibit visibly restraining a criminal defendant at trial unless "overriding concerns for safety or judicial decorum predominate." *Crawford*, 99 Idaho at 96, 577 P.2d at 1144. Therefore, any use of restraints must be based upon a finding that they are necessary. *Id.* at 98, 577 P.2d at 1146; *State v. Hyde*, 127 Idaho 140, 147, 898 P.2d 71, 78 (Ct. App. 1995). Using restraints on a defendant during trial is reversible error if the trial judge fails to make a finding

4

that the restraints are necessary for physical security, to prevent escape, or to maintain courtroom decorum, unless the State can show the error was harmless. *Deck*, 544 U.S. at 635 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)); *State v. Moen*, 94 Idaho 477, 479, 491 P.2d 858, 860 (1971); *Miller*, 131 Idaho at 293, 955 P.2d at 608.

A finding that restraints are necessary may be based on both formally offered evidence admitted at trial and knowledge gained from law enforcement officers or official records. *State v. Knutson*, 121 Idaho 101, 105, 822 P.2d 998, 1002 (Ct. App. 1991). "Although the sheriff has some initial responsibility for determining whether an accused should be handcuffed during a jury trial, the trial judge must, in fulfilling his duty to preside over the trial, decide the question for himself." *Moen*, 94 Idaho at 479, 491 P.2d at 860. The information relied upon to support restraining a defendant should be shown on the record, outside the presence of the jury, and "the defendant should be afforded reasonable opportunity to meet that information." *Id.* at 480, 491 P.2d at 861. Providing such a record allows an appellate court to determine whether the trial court properly exercised its discretion. *Id.* When determining whether physically restraining a defendant is necessary, it is preferred that a hearing is conducted, with sworn testimony and the defendant present, except in cases where the trial process is disrupted in the court's presence. *Id.* at 479-80, 491 at 860-61; *see also Crawford*, 99 Idaho at 98, 577 P.2d at 1146 (holding the use of restraints after an ex parte hearing with the State violated the defendant's due process rights to a fair trial). However, where a trial court fails to hold a hearing, or does not specifically state the reasons for placing a defendant in restraints, we will not find an abuse of discretion so long as the record sufficiently justifies the order to restrain the defendant in a manner that would not be prejudicial. *Moen*, 94 Idaho at 480, 491 P.2d at 861; *Knutson*, 121 Idaho at 106, 822 P.2d at 1003.

Wright was not restrained until the second day of trial. After the testimony from the State's first witness and cross-examination by defense counsel, Wright interrupted the court by saying, "I'd like to make a statement." The court did not allow the statement and finished addressing the jury before calling for a brief recess and suggesting that defense counsel may wish to speak with Wright. Once the court reconvened, and outside the presence of the jury, the district court stated:

> During our recess I am informed by the Marshal that Mr. Wright has become combative and threatening to the Marshal and I have authorized, as a result of that, that he be restrained and continue to be restrained until further

5

order. I am also informed [by defense counsel], who has conferred with Mr. Wright, that he has expressed a desire to discharge [defense counsel] and to proceed to represent himself in this proceeding . . . .

The district court then engaged in a line of questioning regarding Wright's constitutional right to court-appointed counsel and his wish to discharge his attorney. Thereafter, defense counsel was discharged. Then, upon request by Wright, the district court stated it would allow Wright to again cross-examine the State's first witness and asked for the jury to be reseated. Wright raised the issue of his restraints at that time, before the jury was returned, and the district court refused to reconsider the order that Wright be restrained:

[Court]: . . . . All right. Let's bring the jury back in.
[Wright]: May I have these off, sir?
[Court]: No. You show me after awhile here you're doing okay and I'll take them off, but if we have incidents like we had downstairs, you're going to be locked down. I'm not going to have you threatening the Marshals. They're there to do their job and make sure that this courtroom is secure.

Wright argues he was not afforded an opportunity to contest the use of visible restraints[2] and that the record contains no specific evidence justifying the district court's decision. Wright asserts the vague statement, regarding an incident between Wright and the court's marshal and Wright's "combative and threatening" behavior, does not support a finding of necessity for the restraints and the court should have conducted an evidentiary hearing. The State responds that Wright had an opportunity to dispute the marshal's report and failed to do so, and further, the concise statement by the judge regarding Wright's combative and threatening behavior provides enough of a record to justify the use of restraints before the jury.

In reviewing the record, we conclude the district court did not follow the preferred procedure of holding a hearing, providing Wright a reasonable opportunity to meet the evidence being used to support the use of restraints, and putting information on the record to support its finding as to why the use of restraints was necessary. First, the district court had already ordered the use of restraints before the brief hearing and the hearing primarily related to the discharge of counsel. The court did not allow Wright to refute the marshal's report, as the bailiff had already been instructed to retrieve the jurors when Wright made the request for the restraints to be

---

[2] We infer the restraints were visible because Wright asked to "have these off," without having to specifically reference the restraints, indicating they could be seen, and further because the district court later felt it needed to explain to the jury why Wright was restrained.

removed--a request the district court unequivocally denied. Furthermore, just prior to Wright's request to have the restraints removed, the district court admonished Wright to refrain from causing further disruptions as it questioned Wright about discharging counsel:

> [Court]: Do you understand that if you do represent yourself you will not be given any special consideration? You will be responsible to the court under the same procedural and substantive rules and laws that you would be if you had counsel?
>
> [Wright]: Yes.
>
> . . . .
>
> [Court]: Do you understand that if you become disruptive in the process of representing yourself, I will remove you from the courtroom?
>
> [Wright]: Yes.
>
> [Court]: If I am required to apply any restrictive orders because of your conduct, and this is really serious in light of what I've seen, do you understand that that really puts you at a disadvantage, that a lawyer in that circumstance can really protect you where you can't protect yourself because I may have to gag you? If you get mouthy, if you get disruptive, I'll put you in a chair and gag you. So a lawyer is really helpful if you're going to go that direction. If you want to mind your business and be a gentleman in court --
>
> [Wright]: Yes, sir.
>
> [Court]: -- I'm okay.
>
> [Wright]: Be okay.

Then, the district court continued to ask more questions relating to Wright's discharge of counsel. Wright was warned not to be argumentative before he had any opportunity to counter or explain any evidence of previous disruptions or contest the use of restraints.

Next, the information put on the record, relating to the decision to restrain Wright, consisted only of the district court's statements that it had been informed Wright was "combative and threatening" to the marshal and a reference to an incident "downstairs." The district court took no statement on the record from the marshal or any other witness as to the nature of the incident--whether it was only a threatening statement by Wright or escalated from a verbal confrontation to a physical altercation. The district court was entitled to rely on information relayed by the law enforcement officer, but the court provided only an unclear account of the event that took place and put no factual basis in the record as to why it found, in an exercise of the court's own discretion, that restraints were necessary. Finally, after the request by Wright to remove the restraints, the district court failed to state why, if restraints were necessary, it was also necessary to use restraints visible to the jury rather than restraints that would remain unseen and avoid any prejudice.

7

Without any specific findings put on the record at the time restraints were ordered, we look to see whether the record as a whole sufficiently justifies the use of restraints in a manner that would not be prejudicial. We conclude it does not. The only evidence on appeal supporting the use of restraints is the information previously discussed: Wright wished to make a statement after the presentation of the State's first witness, which the court denied; the court recessed; Wright was then ordered restrained because of an incident "downstairs" where he was "combative and threatening" to the marshal; the court admonished Wright about disruptive behavior; and the court denied Wright's request to remove the restraints before reseating the jury. Nothing in the record prior to this "incident" indicates concerns regarding possible escape or a threat to the physical security of persons or the decorum in the court. The only other evidence relating to the restraints indicates that after the jury returned, Wright apologized for his conduct: "I'd like to apologize to the jury for my behavior, but I feel the lawyer wasn't representing me --." The behavior, however, remained undescribed. As such, the record does not adequately justify the district court's decision because we cannot say whether the decision was the result of a sound exercise of discretion and application of the correct legal principles. *See Deck*, 544 U.S. at 634-35 (finding the justification for restraints was inadequate where there were no formal or informal findings on the record, the judge did not refer to a risk of escape or threat to courtroom security, nor did the judge explain why he chose not to provide for shackles that the jury could not see); *cf. Moen*, 94 Idaho at 480-81, 491 P.2d at 861-62 (finding the record sufficiently supported the use of restraints because the defendant was on trial for a charge of escape, charges for other crimes committed during escape showed motive for another attempt to escape, and there were multiple defendants in the case).

We do not lightly second guess the decision of a trial court to restrain a defendant. *Moen*, 94 Idaho at 481, 491 P.2d at 862. However, a decision whether to restrain a defendant requires close judicial scrutiny in weighing the State's interest against the prejudice to the defendant. *See Estelle*, 425 U.S. at 503-04. This imposes an initial burden on the court to determine both the facts supporting the use of restraints and whether the situation could be resolved in another manner, as the use of restraints should be exercised only as a last resort. *Allen*, 397 U.S. at 344; *see also Gonzalez v. Pliler*, 341 F.3d 897, 900, 902 (9th Cir. 2003) (stating "the court must pursue less restrictive alternatives before imposing physical restraints" and that "it is the duty of the trial court, not correctional officers, to make the affirmative determination."). It is only in

8

extreme and exceptional cases, where the safe custody of the prisoner and the peace of the tribunal imperatively demand, that restraints should be used. *Deck*, 544 U.S. at 626-27. Although we recognize in certain circumstances, such as an on-the-record disruption by the defendant, the record itself demonstrates the need for restraints and no further evidence may be necessary, such is not the case here. From this record, we cannot determine if the district court considered whether Wright's disruptive behavior resulted from Wright's impressions of counsel's poor representation and might have been adequately resolved with the discharge of defense counsel or whether less restrictive means were available.[3] As such, the record here does not show a necessity to restrain Wright and does not adequately justify the district court's decision.

### 2. Informing the jury about the restraints

The due process right to a fair trial requires a finding of necessity, based on an overriding State interest, to restrain a criminal defendant because the use of restraints infringes upon the defendant's presumption of innocence and may affect the outcome of a trial. *Crawford*, 99 Idaho at 95, 577 P.2d at 1143. Use of restraints visible to a jury may be especially prejudicial in a trial for a crime of violence. *Larson v. Palmateer*, 515 F.3d 1057, 1064 (9th Cir. 2008). It is axiomatic, therefore, that before a defendant may assert a violation of due process by the use of restraints, there must be evidence to show the jury was aware of the restraints and had an opportunity to draw a conclusion regarding the defendant's character. *See Miller*, 131 Idaho at 293, 955 P.2d at 608 (finding there was no claim of due process violations where the locking leg restraint was worn under the defendant's clothing and was not seen by the jury). Where the restraints are seen by the jury and a court has ordered the use of restraints without adequate justification, "the defendant need not demonstrate actual prejudice to make out a due process violation." *Deck*, 544 U.S. at 635. In such a circumstance, the State must prove "beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." *Id.* (quoting *Chapman*, 386 U.S. at 24); *see also State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010) (adopting the *Chapman* test for harmless error).

In this case, after being brought back to the courtroom, the jury's attention was specifically drawn to the restraints by the district court: "For the record, so there's no question as far as what's going on, there's been a little fuss over the break and I've required that Mr.

---

[3] We have no record or description of the restraints actually used in this case.

Wright be restrained. If he behaves himself here in awhile, we'll loosen that up." Thus, there is no doubt the jury was aware of the restraints and had the opportunity to form an opinion about Wright or his character. Also problematic is that Wright was on trial for a crime of violence--armed robbery.

The State, then, has the burden to show beyond a reasonable doubt that there was no reasonable possibility that the error complained of contributed to the conviction. Here, the State has not argued that the error by the district court in visibly restraining Wright in front of the jury was harmless. As the United States Supreme Court stated in *Deck*, the effects of an inherently prejudicial practice, such as compelling a defendant to wear prison clothes or forcing him to be restrained during trial, cannot be shown from a trial transcript. *Deck*, 544 U.S. at 635. Visible restraints may affect the presumption of innocence, the ability of a defendant to assist in his defense, and the dignity of the courtroom. *Id.* at 630-31. Especially where a defendant has chosen to represent himself, we are unable to say how a court's admonitions and the restraints placed on a defendant during trial impacted his ability to challenge the State's case or present his own defense without a weighing by the district court and specific findings on the record.

Moreover, this case is distinguishable from previous cases where we have found a shackling error to be harmless. In *Knutson*, this court concluded the evidence overwhelmingly supported a guilty verdict and briefly seeing the defendant in a leg restraint did not cause prejudice. *Knutson*, 121 Idaho at 107, 822 P.2d at 1004. There, however, the trial judge offered to give the jury a curative instruction, the defendant was on trial for a charge of escape--which we concluded justified the use of restraints--and the restraint was later replaced with a knee brace and concealed underneath the defendant's clothing. *Id.* In *Moen*, in reviewing whether the restraints caused prejudice, we determined defense counsel invited error when he raised the issue of handcuffs in the presence of the jury, where again the defendant was on trial for a charge of escape and the evidence overwhelmingly supported the guilty verdict. *Moen*, 94 Idaho at 481, 491 P.2d at 862. Here, we cannot say beyond a reasonable doubt that the use of visible restraints, unsupported by the record, did not contribute to the verdict in the trial for a violent crime of a pro se defendant. Therefore, we are compelled to vacate the judgment of conviction in this case. *See Deck*, 544 U.S. at 635 (reversing the judgment).

## B. Prosecutorial Misconduct

For guidance on remand, we address Wright's additional claims of trial error. First, Wright asserts the prosecutor committed misconduct when he referred to Wright's refusal to consent to a search of Wright's person, specifically the refusal to allow investigators to photograph the soles of his shoes. The prosecutor brought forward that fact during opening statements, through testimony from two witnesses, and again during closing argument. Wright asserts that even without objection to the trial court, these instances of misconduct rise to the level of fundamental error. The State responds that the "search" was not a search at all, but rather Wright's obstruction of justice in response to a lawful request by an officer. Thus, the State argues, Wright fails to show constitutional error.

When there is no contemporaneous objection, a conviction will be reversed for prosecutorial misconduct only if the conduct is sufficiently egregious so as to result in fundamental error. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Betancourt*, 151 Idaho 635, 640, 262 P.3d 278, 283 (Ct. App. 2011). As a threshold, we must determine factually if there was prosecutorial misconduct. *See Field*, 144 Idaho at 571, 165 P.3d at 285; *Sheahan*, 139 Idaho at 280, 77 P.3d at 969. Then, to find that prosecutorial misconduct constitutes fundamental error, the defendant bears the burden of establishing that the error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists without the need for additional information not contained in the appellate record; and (3) was not harmless. *Perry*, 150 Idaho at 228, 245 P.3d at 980; *Betancourt*, 151 Idaho at 640, 262 P.3d at 283.

We conclude the statements by the prosecutor and his witnesses do not constitute fundamental error because Wright cannot establish the first prong, that the issue involves an unwaived constitutional right. A reference, by a prosecutor or witness, to a defendant's invocation of a constitutional right deprives an accused of his or her right to due process and a fair trial, and establishes the first prong of the *Perry* test. *Betancourt*, 151 Idaho at 640, 262 P.3d at 283. As a threshold matter, it must be established that the reference does, in fact, involve the invocation of a constitutional right.

Here, Wright argues he was asserting his Fourth Amendment right to be free from unreasonable searches and seizures. Wright is correct that eliciting testimony from a witness regarding a defendant's refusal to consent to a search, when used for the purpose of inferring

11

guilt, is prosecutorial misconduct and may be fundamental error. *State v. Christiansen*, 144 Idaho 463, 470-71, 163 P.3d 1175, 1182-83 (2007); *Betancourt*, 151 Idaho at 640, 262 P.3d at 283. However, in order to invoke fundamental error on the basis of impermissible references to a defendant's refusal to consent to a search, it must be established that the action by law enforcement involved a search that implicates the Fourth Amendment. *See Betancourt*, 151 Idaho at 639-40, 262 P.3d at 282-83 (applying fundamental error to a claim involving the defendant's right to refuse to consent to the search of his vehicle). Observation of items readily visible to the public is not a "search" within the purview of that right; what a person knowingly exposes to the public is not subject to Fourth Amendment protection. *Katz v. United States*, 389 U.S. 347, 351 (1967). In order to implicate Fourth Amendment rights, a person must have a reasonable expectation of privacy in the place or thing subject to the search. *See id.*; *State v. Curry*, 103 Idaho 332, 338, 647 P.2d 788, 794 (Ct. App. 1982). In *Curry*, this Court concluded a defendant did not have a reasonable expectation of privacy with respect to the physical characteristics of the soles of his shoes. *Id.* at 338, 647 P.2d at 794. We reasoned that, just as with a person's voice or handwriting, a person has no reasonable expectation of privacy in the imprint made by his shoes because it is repeatedly shown to the public. *Id.* Therefore, because it is not a search, refusing to consent to having the soles of one's shoes observed cannot be construed as an invocation of a constitutional right, and Wright fails to establish the first prong of the *Perry* fundamental error analysis. Rather, this evidence showing consciousness of guilt, including the destruction or concealment of evidence, may be admissible at trial. *See Sheahan*, 139 Idaho at 279, 77 P.3d at 968; *State v. Pokorney*, 149 Idaho 459, 463-64, 235 P.3d 409, 413-14 (Ct. App. 2010).

Wright nonetheless argues that our conclusion in *Curry* was either dicta or has since been put into question by the United States Supreme Court's holding in *Arizona v. Hicks*, 480 U.S. 321 (1987). In *Hicks*, the United States Supreme Court held that even a de minimus search implicates the Fourth Amendment. *Id.* at 325. Yet, it is this very argument by Wright that shows he also fails to establish the second prong of fundamental error, that the error is plain. To be a plain or obvious error requires that the error is clear under current law. *United States v. Olano*, 507 U.S. 725, 734 (1993). In other words, the available authorities need to provide a clear answer to the question, *United States v. Thompson*, 82 F.3d 849, 855 (9th Cir. 1996), and the appellant must show the existing authorities have unequivocally resolved the issue in the

12

appellant's favor, *State v. Hadden*, 152 Idaho 371, 375, 271 P.3d 1227, 1231 (Ct. App. 2012). The law does not unequivocally support Wright's position. To the contrary, though the United States Supreme Court has not definitively decided this particular issue, other authorities tend to support this Court's position in *Curry*, that a person does not have a reasonable expectation of privacy in the physical characteristics of one's shoes. *See Commonwealth v. Billings*, 676 N.E.2d 62, 65 (Mass. App. Ct. 1997) (concluding there was no search because the soles of a person's shoes are constantly exposed to the public); *State v. Bates*, 495 A.2d 422, 427 (N.J. Super. Ct. App. Div. 1985) (finding no reasonable expectation of privacy in the soles of one's shoes); *State v. Selvidge*, 635 P.2d 736, 739-40 (Wash. Ct. App. 1981) (holding that because defendant had no reasonable expectation in the soles of a person's shoes, there was no search); *but see Sheler v. Commonwealth*, 566 S.E.2d 203, 208 (Va. App. 2002) (finding police violated a defendant's Fourth Amendment rights by conducting a warrantless search of the bottom of a person's shoes).

We conclude that Wright fails to show fundamental error in the prosecutor's statements, or the witnesses' testimony, regarding Wright's refusal to allow investigators to photograph the soles of his shoes. Wright cannot show it involves an unwaived constitutional right or that the error is plain in the record.

## C.    Evidence of Other Prior Acts

Finally, Wright argues the district court erred in allowing irrelevant evidence of his prior acts to be introduced at trial. In particular, Wright objected to evidence that tended to place him in the area of the robbery, acting suspiciously in a bank lobby, on the day prior to the commission of the crime. Wright asserts the evidence was entirely irrelevant to whether he committed the robbery at a different location on a different day. The State responds that the evidence was relevant because it placed Wright in a bank near the site of the robbery, wearing clothing associated with the robber of the loan store, and with his known associates prior to the robbery, all tending to show plan or preparation.

Irrelevant evidence is not admissible. Idaho Rule of Evidence 402. Similarly, evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's criminal propensity. I.R.E. 404(b); *State v. Johnson*, 148 Idaho 664, 667, 227 P.3d 918, 921 (2010); *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). However, such evidence may be admissible for a purpose other than that prohibited by Idaho Rule of Evidence 404(b) if the

13

evidence is relevant and the probative value is not substantially outweighed by any unfair prejudice to the defendant. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009). Here, Wright only argues relevancy. Evidence of other acts is not relevant unless the jury can reasonably conclude the act occurred and the defendant was the actor. *Id*. Thus, there must be sufficient evidence to establish the other acts as fact. *Id*. Relevancy in this context also requires that the evidence of other acts is relevant to a material, disputed issue concerning the crime charged, other than criminal propensity. *Id*. Whether evidence is relevant is an issue of law. *Johnson*, 148 Idaho at 667, 227 P.3d at 921; *Parmer*, 147 Idaho at 214, 207 P.3d at 190. Therefore, when considering admission of evidence of other acts, we exercise free review of the trial court's relevancy determination. *Parmer*, 147 Idaho at 214, 207 P.3d at 190.

The State presented the manager of a bank located near the loan store as a witness at trial. He testified that a suspicious man had entered the bank on the day prior to the loan store robbery. At this point, Wright objected on grounds of relevancy. The district court acknowledged that it did not see how the evidence was relevant but allowed the line of questioning to continue. Upon further questioning, the bank manager testified that the man was wearing a large, hooded sweatshirt, entered the bank lobby, looked around and approached the teller station, but then left without conducting any business in the bank. The sweatshirt the man wore, as described by the bank manager, matched a sweatshirt that had been found in the car Wright was riding in and was believed to have been worn by Wright during the robbery.[4] The bank manager further related a second incident of suspicious behavior that took place within hours of the first suspicious activity, where the same man entered the lobby, again left without conducting bank business, and then met with a second man. Wright continued to object, on relevance grounds, to both the bank manager's testimony and the admission of photographs taken from the security cameras at the bank, which showed the man who entered the bank wearing a sweatshirt consistent with that described by the bank manager and with the one previously admitted into evidence. However, the district court overruled each objection, citing to the fact that the clothing was similar.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *State v. Harvey*, 142 Idaho 527, 532, 129 P.3d 1276, 1281 (Ct. App. 2006). Rule 404(b) allows the admission of evidence that is relevant or tends to show

---

[4]     Prior to the bank manager's testimony, the sweatshirt had been admitted into evidence.

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Where identity is a central issue in a trial on a charge of robbery, testimony regarding a prior incident, including description of clothing and disguises used, may be highly probative. *See State v. Alger*, 115 Idaho 42, 47, 764 P.2d 119, 124 (Ct. App. 1988). Testimony tending to place a defendant at the scene of the crime may also provide relevant circumstantial evidence. *See State v. Smith*, 117 Idaho 891, 897, 792 P.2d 916, 922 (1990).

Here, the bank manager's testimony regarding a man acting suspiciously in the area of the robbery, and who was wearing clothing similar to that found in the vehicle Wright was riding in, is relevant circumstantial evidence tending to place the people apprehended in the vehicle near the scene of the robbery. Along with other testimony linking the clothing to Wright, the testimony by the bank manager also tended to establish Wright's identity as one of the perpetrators and show his preparation for committing the crime. We hold the evidence was relevant and the district court did not err in allowing the evidence to be admitted at trial. Therefore, there is no error.

### III.

### CONCLUSION

We conclude the district court erred by restraining Wright during trial without adequate justification on the record to support a finding that the use of restraints was necessary and in alerting the jury to the fact Wright was restrained. We further conclude the error was not harmless. Accordingly, we vacate Wright's judgment of conviction for robbery and remand for a new trial.

Judge LANSING and Judge MELANSON **CONCUR.**

15