**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41161**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Opinion No. 65 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 20, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOHN (2013-14) DOE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Richard S. Christensen, District Judge; Hon. Clark A. Peterson, Magistrate; Hon. James D. Stow, Magistrate.

Decision, on intermediate appeal, affirming order of commitment for malicious injury to property, <u>affirmed</u>.

John M. Adams, Kootenai County Public Defender; Jay Logsdon, Deputy Public Defender, Coeur d'Alene, for appellant. Jay Logsdon argued.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent. Daphne J. Huang argued.

---

GUTIERREZ, Chief Judge

John Doe appeals from the decision of the district court on intermediate appeal affirming the magistrate's order that Doe committed malicious injury to property, bringing him within the purview of the Juvenile Corrections Act (J.C.A.). He also challenges the district court's determination that mootness precluded review of Doe's claim that his right to due process was violated by the magistrate's failure to hold a hearing and make individualized findings regarding whether Doe must remain shackled during court proceedings. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

Doe was served with a petition and summons alleging he committed malicious injury to property, Idaho Code § 18-7001, bringing him within the purview of the J.C.A. Specifically, the

1

petition alleged he damaged a refrigerator by tipping it over at the juvenile group home where he was residing.

After appearing before a magistrate several times, Doe was appointed counsel who filed a "Motion for Hearing to Remove Physical Restraints" and memorandum in support.[1] In the motion, Doe argued that routine shackling of juveniles without an individualized finding that shackles are necessary in a particular case "is in violation of Due Process, harms the integrity of the judiciary, and is not conducive to the juvenile system's stated emphasis on rehabilitation." Therefore, he asserted, the magistrate was required to hold a hearing and then exercise its discretion as to whether Doe should continue to be shackled during court proceedings. Over a week later, Doe appeared with counsel in court for a pretrial conference. Doe was in "handcuffs attached to a belly chain and [had] shackles on."[2] At the pretrial conference, the court took up Doe's motion regarding shackling. After hearing argument from both sides, the magistrate stated it would also incorporate arguments that defense counsel had made earlier in the day regarding the use of shackles on a different juvenile in a different case (hereinafter Doe II) and the court's denial of the motion in that case. The magistrate court denied Doe's motion.

Doe appeared before a different magistrate judge for the evidentiary hearing on the malicious injury to property charge. After the hearing commenced, the magistrate allowed Doe to be unshackled upon finding the State no longer had authority under the J.C.A. to detain Doe because the time limits for detention in the statute had been reached. The State presented its case through the testimony of a group home employee who witnessed the incident and the responding police officer. The employee testified that on the day of the incident, he was supervising Doe and three other juvenile residents who were cleaning in the dining room. The employee testified that some of the juveniles became upset, including Doe, and while the employee's back was

---

[1] The record is unclear as to whether Doe was shackled during the appearances prior to being appointed counsel. This is a logical assumption, however, given that something must have prompted defense counsel to file the motion for a hearing on the continued use of physical restraints and defense counsel indicated at the commencement of the pretrial conference that Doe was "once again" handcuffed and shackled.

[2] Hereinafter we refer to physical restraints, including handcuffs and belly chains, generally as "shackles" or "restraints." *See Deck v. Missouri*, 544 U.S. 622, 625 (2005) (using the terms interchangeably).

turned, Doe overturned a large refrigerator. The employee testified that Doe told the employee he pushed over the refrigerator "out of rage." A Coeur d'Alene police officer who had responded to the scene testified that Doe told him some of the other juveniles present had been teasing Doe, which caused Doe to become angry and push over the refrigerator. The officer testified that Doe admitted he knew what he did was wrong, but that he had been angry and "he thought it was better to push over the refrigerator than hurt somebody." Doe testified that he merely tried to "move" the refrigerator out of the way and had not anticipated that it would fall over. He claimed to have told the responding officer that it was better to move the refrigerator out of his way than to engage in a physical conflict with another juvenile. The magistrate determined Doe committed malicious injury to property as charged by the petition.

Doe appealed to the district court, contending the magistrate erred by failing to hold a hearing and to make individualized findings regarding whether Doe must remain shackled during court proceedings. He also contended the magistrate erred by determining that he committed malicious injury to property, asserting the evidence did not support a finding that he had the requisite intent. The district court held a hearing, during which Doe was present in shackles. In a written decision, the district court determined the shackling issue was moot and that the State had presented sufficient evidence for the magistrate to find that Doe committed malicious injury to property. Doe now appeals to this Court.

## II.

## ANALYSIS

Doe contends the district court erred by determining the shackling issue was moot because it falls within exceptions to the mootness doctrine. As to the merits of the issue, Doe argues his due process rights were violated by the magistrate's failure to hold a hearing and make individualized findings that the use of shackles was necessary as to Doe specifically. Finally, he contends the district court erred by affirming the magistrate's determination that he possessed the requisite intent for malicious injury to property.

When reviewing the decision of a district court sitting in its appellate capacity, our standard of review is the same as expressed by the Idaho Supreme Court:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow

3

therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)).  Thus, the appellate courts do not review the decision of the magistrate court.  *Bailey*, 153 Idaho at 529, 284 P.3d at 973.  Rather, we are procedurally bound to affirm or reverse the decisions of the district court.  *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n.1 (2009).

## A.    Use of Shackles

At the pretrial conference, the parties briefly discussed the shackling issue with the magistrate, after which the magistrate indicated it was incorporating counsel's argument and the magistrate's holding from Doe II and "deny[ing] the request."[3]  The transcript of Doe II's hearing to which the magistrate referred is in the record.  There, defense counsel argued that the restraints on Doe II (which, like in this case, were handcuffs attached to a belly chain and leg shackles) were a restriction of Doe II's "freedom of movement" and "right to Due Process."  Defense counsel recognized that the court had discretion to determine whether Doe II should remain shackled, but argued such a determination should be made "on the basis of personal characteristics of [the client] that would lead the Court to believe that he [presents] either a danger of [running away] or . . . causing some sort of disturbance in the courtroom."  The State responded:

> Your Honor, it is at your discretion, obviously.  I have several things that are--obviously, the charges[4] before the Court . . . raise concern.  Based on these charges I would be concerned about violation.
>      There is also a very full courtroom with both . . . juveniles, parents, [and] family.  And there is also limited court staff, bailiff and also staff from [the juvenile detention center].  So, I would have to defer to them regarding . . . their comfort level . . . and whether it poses a safety issue.  But, again, it's at your discretion, your Honor.

---

[3]    It is not entirely clear from the transcript whether the magistrate intended to deny Doe's request to hold a hearing on whether he must be shackled or denying a request, to the extent that it had been made, to remove Doe's shackles.  Resolution of this issue is not necessary given our disposition of the case.

[4]    The record does not indicate the charges against Doe II.

4

The magistrate indicated it had read defense counsel's "lengthy" motions and made the following ruling:

[I]n making a finding, I think I can just frankly deny this without additional order. There's been a sufficient record, I think, before the Court.

But in any event, the juvenile's not detained[5] because of security issues that are posed by the Courthouse.

The juvenile is not being detained as a result of limited staff, even though I know [the State] did mention that.

Essentially, the juvenile's detention is based on individualized issues posed by his behavior and other factors. And with the input, of course, of the Juvenile Detention staff.

In making that ruling, I'm not conceding that I'm required to make such a ruling or that any further hearing need be had. But, nevertheless, I have addressed the motion.

I'll deny the motion in both cases as to that issue.

But juveniles are not, in this County, routinely shackled. They're only shackled when there's a determination made for their detention and based on the input from the Detention staff that such is necessary for the security of the courtroom.

And not just that, for the security of the juvenile themselves, because when a juvenile has a conduct disruption or problem in court, or even if they attempt to flee or do things like that . . . [u]nlike an adult who is then apprehended by adult[] security staff, you have a juvenile who then has to be apprehended by adult security staff, which poses a risk and a danger of injury to the juvenile, in addition to the control issues that juveniles often don't have that adults do have.

So, for all those many reasons and, frankly, I think I could just simply deny it as is, I'll deny the request at this time.

Later during the hearing, defense counsel asked for a "point of clarification as to the shackles":

[Defense counsel]: It sounded like the Court was stating that if a juvenile is found . . . to be detained by the Court . . . that decision would essentially encompass a decision that shackling . . . would be necessary in a courtroom as long as that--

[The Court]: No, I'm not saying that. I think . . . every juvenile--the decision with the input of correction staff--or Detention staff is an individualized decision based on the risk, history, behavior, et cetera, of that specific juvenile. So, that is, I think, the reason for the juvenile staff's shackling. But that said . . . I'm not making policy determinations.

---

5    We assume that in saying "detained" the magistrate meant "restrained" or "shackled."

Doe appealed the shackling issue to the district court, contending the magistrate did not hold the requisite hearing or make the requisite findings specific to Doe when ordering that Doe remain shackled at the pretrial conference. The district court heard oral argument from both parties, during which the following exchange occurred between the court and the prosecutor:

> [The Court]: Let me ask, is there a policy of shackling all juveniles?
>
> [Prosecutor]: I know [Magistrate] Judge Peterson stated it was not the county's policy to do that. Whenever a juvenile does come before the Court, they are in shackles, but that is because at the detention hearing they have made certain rulings and it's the policy of JDC to transport them in shackles. So whether or not there's an actual policy of routine shackling, I don't know that I can answer that question.
>
> [The Court]: [T]he Court will . . . note for the record that the juvenile is shackled today. Is there a reason why the juvenile's shackled today?
>
> [Prosecutor]: From my understanding, it is the policy of JDC to transport the juveniles in shackles for their own safety, also for the protection of the staff, and obviously to prevent escape.
>
> [The Court]: But it's my understanding that the motion that was brought by the juvenile's counsel was not to have shackling at the hearing; is that correct?
>
> [Prosecutor]: Yes.
>
> [The Court]: Okay. When they appear in court. So it's not an issue of transportation, right?
>
> [Prosecutor]: No, that is the way they arrive. His issue is whether he should remain shackled in the courtroom itself for those hearings.

The district court and defense counsel further discussed the county policy as to the use of shackles:

> [Defense counsel]: Well, your Honor, in terms of shackling, it is--or the time that I've practiced here, I've never seen a juvenile that wasn't brought in in shackles. If they were currently being detained, the shackles remain on them the entire time they're in the courthouse except on the few occasions when I've convinced the magistrate to remove them and then they were immediately placed back on--
>
> [The Court]: And in this case, when the juvenile went to disposition or evidentiary hearing, the shackles were on, correct?[6]
>
> [Defense counsel]: That is correct, your Honor, which seems to indicate that it probably wouldn't have been the end of the world had they been removed during his pretrial conference hearing or any other hearing. But they were removed in that case because . . . his detention . . . was actually unlawful at the

---

[6]     Given defense counsel's answer to this question, it appears the district court either intended to ask, actually did ask, or counsel believed it asked whether, when Doe attended the evidentiary hearing, the shackles were *not* on.

6

time. He was serving more time in the detention facility than was allowed under the sentence he was serving, so that's why they had to remove them.

[The Court]: Is it just the practice here? Does it vary between magistrates?

[Defense counsel]: It does. Three magistrates will hold a hearing as to whether or not the shackles are necessary and remove them. Judge Peterson will not have that hearing. And two magistrates have never heard a request to have such a hearing . . . .

The district court took the matter under advisement and made two determinations in its written opinion relevant to the issue. First, the court found the record indicated Doe "had both the ability and opportunity to be heard and was heard on his motion," noting there was no indication the magistrate ignored Doe's request for a hearing or denied Doe the opportunity to introduce evidence in support of his motion. Specifically, the district court noted that defense counsel "only presented oral argument and did not proffer any evidence but for a single affidavit of a clinical psychiatrist as to the effects of physically restraining juveniles" and when the magistrate indicated it would incorporate counsel's argument and the magistrate's findings from Doe II's hearing, counsel acquiesced.

The district court also found that none of the exceptions to the mootness doctrine were applicable in this case. Specifically, the court indicated there was a "paucity of evidence in the record that this is a recurring situation" and noted the magistrate had stated that "juveniles are not--in this County, routinely shackled." The district court also stated it was not persuaded that this issue "raises substantial public interest," indicating the record was devoid of such evidence.

### 1. Mootness

Doe first contends the district court erred by determining that the issue whether a magistrate must hold a hearing and make individualized findings concerning shackling was moot and no exceptions were applicable. An issue becomes moot if it does not present a real and substantial controversy that is capable of being concluded by judicial relief. *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010). However, even where a question is moot, there are three exceptions to the mootness doctrine: (1) when there is the possibility of collateral legal consequences imposed on the person raising the issue; (2) when the challenged conduct is likely to evade judicial review and thus is capable of repetition; and (3) when an otherwise moot issue raises concerns of substantial public interest. *Id*.

Doe concedes that, unless saved by an exception, the issue presented is moot. Appellate counsel indicates Doe has served his term; thus, any judicial relief from this Court would simply create precedent for future cases and would have no effect on either party. Consequently, this issue pursued by Doe on appeal must fall within one of the exceptions listed above in order to be addressed by this Court. *See id.* Doe argues that the two latter exceptions apply; we only discuss the second--that the challenged conduct is likely to evade judicial review--because it is dispositive.

As Doe points out, pursuant to the J.C.A., most juvenile cases are of short duration. For example, Idaho Juvenile Rule 15 requires that a juvenile have an evidentiary hearing within ninety days of entering a denial or within forty-five days from his initial appearance if kept in continuous preadjudication detention. By contrast, the time to obtain adjudication of a claim on appeal is significantly longer. Thus, Doe contends, the issue of shackling during juvenile proceedings "is likely to evade review on appeal because the vast majority of juvenile cases simply do not last long enough for the issues to be decided on appeal if the courts are unwilling to apply an exception to mootness." In other words, it is likely to be a rare instance where a juvenile continues to be subject to shackling in court proceedings related to the charge or charges at issue when his or her appeal is finally adjudicated. We agree that these circumstances satisfy the second mootness exception. *Accord Tiffany A. v. Superior Court*, 59 Cal. Rptr. 3d 363, 368 (Cal Ct. App. 2007) (addressing the same issue and noting that "given the relatively short duration of the proceedings, and the pace through which many minors move through the court and the wardship system, this issue may evade review for a significant period of time").

## 2. Due process

Doe argues his due process rights were violated by the magistrate's failure to hold the requisite hearing and make individualized findings as to whether Doe must remain in shackles at the pretrial conference. Specifically, Doe contends that for a juvenile to be shackled in *any* juvenile court proceeding, due process requires that an adversarial hearing be conducted, after which a court must make individualized findings about the individual juvenile regarding whether the juvenile may continue to be shackled during subsequent court proceedings. This presents a question of constitutional law, over which we exercise free review. *State v. O'Neill*, 118 Idaho 244, 245, 796 P.2d 121, 122 (1990); *State v. Miller*, 131 Idaho 288, 292-93, 955 P.2d 603, 607-08 (Ct. App. 1997).

8

The United States Supreme Court and Idaho courts clearly recognize the right of *adult* defendants to be free from visible physical restraints during criminal jury trials unless a court finds, in its discretion, that circumstances specific to the case warrant the use of such restraints. *See State v. Wright*, 153 Idaho 478, 484, 283 P.3d 795, 801 (Ct. App. 2012).  However, neither the United States Supreme Court nor Idaho appellate courts have yet addressed whether the prohibition against the routine shackling of adult defendants, that is, shackling without a hearing and individualized findings as to the defendant, applies with equal force to the shackling of juveniles.  Thus, the extent to which a juvenile has a right to appear in juvenile court proceedings free from physical restraints is a question of first impression in Idaho.

Because it is the starting point for our analysis, we first examine the constitutional law applicable to the shackling of adult defendants in Idaho during jury trial proceedings, which we summarized in *Wright*:

> "[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck* [*v. Missouri*], 544 U.S. [622,] 629, [2005]; *see also Estelle v. Williams*, 425 U.S. 501, 505 (1976) (recognizing shackles should only be used when necessary to control a defendant); *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970) (holding a defendant may be restrained to maintain the decorum in a courtroom).  A criminal defendant may be restrained during trial only in the "presence of a special need." *Deck*, 544 U.S. at 626.  Interpreting this, the Idaho Supreme Court held the Due Process Clauses of both the United States and Idaho Constitutions prohibit visibly restraining a criminal defendant at trial unless "overriding concerns for safety or judicial decorum predominate." [*State v.*] *Crawford*, 99 Idaho [87,] 96, 577 P.2d [1135,] 1144 [(1978)].  Therefore, any use of restraints must be based upon a finding that they are necessary. *Id*. at 98, 577 P.2d at 1146; *State v. Hyde*, 127 Idaho 140, 147, 898 P.2d 71, 78 (Ct. App. 1995).  Using restraints on a defendant during trial is reversible error if the trial judge fails to make a finding that the restraints are necessary for physical security, to prevent escape, or to maintain courtroom decorum, unless the State can show the error was harmless. *Deck*, 544 U.S. at 635 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)); *State v. Moen*, 94 Idaho 477, 479, 491 P.2d 858, 860 (1971); *Miller*, 131 Idaho at 293, 955 P.2d at 608.

*Wright*, 153 Idaho at 484, 283 P.3d at 801; *see also* I.C. § 19-108 (prohibiting "any more restraint than is necessary" in order to detain the defendant to answer his or her charges).

Doe argues that regardless of the differences in juvenile and adult proceedings, the due process right recognized in the preceding authority should apply to all juvenile court

9

proceedings. The State disagrees, arguing that the concerns attending the use of restraints in adult jury trials do not apply to Doe's pretrial conference, or any juvenile proceedings, because a jury was not, and is never, utilized in juvenile proceedings. The State also contends the magistrate made a valid determination that restraints were warranted for security purposes in Doe's case.

Several state courts have found that the constitutional prohibition of routine shackling of adult defendants in jury trials extends to juvenile adjudicatory proceedings,[7] regardless of the differences inherent in juvenile proceedings. In *State ex rel. Juvenile Dep't of Multnomah Cnty. v. Millican*, 906 P.2d 857, 859 (Or. Ct. App. 1995), the juvenile appellant contended the court's refusal to unshackle him during the adjudicatory hearing violated his due process rights and interfered with his right to a fair trial. The issue arose when, at the commencement of the adjudicatory hearing, the juvenile's counsel objected to the juvenile being forced to appear at the hearing in the leg chains routinely utilized by sheriff's officers to transport juveniles from the detention center to the courthouse. Counsel argued that although inadequate staffing may explain the necessity of transporting juveniles in shackles, requiring that a juvenile be shackled during court proceedings implicated his client's rights to due process and a fair trial. The trial court rejected the request, noting it was not a jury proceeding and that the juvenile's appearance in chains would not affect the court's view of the evidence presented. Counsel replied that although it believed the court could "overlook" the chains, "it is more difficult for the juvenile to overlook that" and expressed his belief that shackling affects the juvenile and his participation in his trial. *Id*.

The *Millican* court first noted that Oregon had long recognized the right of adult defendants to be free from physical restraints during criminal trials, a right derived from the common law, the Fifth Amendment, and the Due Process Clause. *Id*. (citing *State v. Smith*, 8 P. 343 (Or. 1883)). The court noted, "Although most often invoked as a safeguard against potential jury prejudice, the right to stand trial unshackled also ensures that defendants may face the court 'with the appearance, dignity and self-respect of a free and innocent [person].'" *Id.* (citations

---

[7]     States use various names for the juvenile proceeding equivalent to the adult trial, at which evidence is presented and the court adjudicates the juvenile's "guilt." We refer to these types of hearings generally as adjudicatory hearings, but in regard to Idaho specifically, we utilize "evidentiary hearing," the term contained in the Juvenile Corrections Act. I.C. § 20-519.

omitted). Further, the Court of Appeals of Oregon had previously recognized that shackles "'impinge on the presumption of innocence and the dignity of the judicial proceedings and may inhibit consultation with his attorney and his decision whether to take the stand as a witness.'" *Id*. (citation omitted). For these reasons, the *Millican* court indicated that juveniles have the same right as adult defendants to appear free from physical restraints absent a finding that such restraints are warranted as to the particular juvenile. *Id*. at 860. "'Neither the Fourteenth Amendment nor the Bill of Rights,'" the court quoted, "'is for adults alone.'" *Id*. (quoting *In Re Gault*, 387 U.S. 1, 13 (1967)). In coming to this conclusion, the *Millican* court specifically recognized that although some concerns underlying the rule applicable to adult defendants do not apply in the juvenile court context because there is no right to a jury trial in the latter, two factors warranted the extension of the right against physical restraints to juvenile proceedings:

> First, the right to remain unshackled is based on considerations beyond the potential for jury prejudice, including inhibition of free consultation with counsel. That concern applies equally in the juvenile context.
> Second, extending the right to remain unshackled during juvenile proceedings is consonant with the rehabilitative purposes of Oregon's juvenile justice system. Allowing a young person who poses no security hazard to appear before the court unshackled, with the dignity of a free and innocent person, may foster respect for the judicial process.

*Id.* (citations omitted).

Several years later, a California Court of Appeal followed suit in *Tiffany A.*, 59 Cal. Rptr. 3d at 375, determining that California's long history of disallowing the indiscriminate shackling of adults extended to juveniles appearing in juvenile court proceedings.[8] The *Tiffany A.* court rejected the lower court's holding that courtroom safety, standing alone, was sufficient justification to establish a general policy to shackle all minors appearing before the court in any proceeding. *Id*. To reach this conclusion, the court first examined California case law regarding the use of shackles on adult defendants. In *People v. Duran*, 545 P.2d 1322 (Cal. 1976), the California Supreme Court discussed the potential harms resulting from the shackling of adult defendants, including "possible prejudice in the minds of the jurors, the affront to human dignity,

---

[8]     The holding in *Tiffany A. v. Superior Court*, 59 Cal. Rptr. 3d 363 (Cal Ct. App. 2007) extended to *all* juvenile court proceedings which, as we discuss below, is broader than the rule we adopt today.

the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand." *Id*. at 1327. The *Duran* Court also recognized the United States Supreme Court's maxim that physical restraints should only be used as a last resort, not only because of the prejudice created in jury's minds, but also because "'the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.'" *Id.* (quoting *Allen*, 397 U.S. at 344). Thus, the *Duran* Court reaffirmed the rule that a defendant could not be subject to restraints of any kind in the courtroom while in the jury's presence unless there was a showing of "manifest need." *Id*.

The *Tiffany A.* court recognized that since *Duran*, California courts had held that the principles announced in *Duran* applied equally to court proceedings other than jury trials. *Tiffany A.*, 59 Cal. Rptr. 3d at 371. For example, in *People v. Fierro*, 821 P.2d 1302, 1322 (Cal. 1991), the California Supreme Court held there must be "some showing" of necessity for the use of shackles even at a preliminary hearing. The *Fierro* Court determined that routine shackling was disallowed even where a jury was not present, noting that the general rule applicable to jury proceedings "serves not merely to insulate the jury from prejudice, but to maintain the composure and dignity of the individual accused, and to preserve respect for the judicial system as a whole; these are paramount values to be preserved irrespective of whether a jury is present during the proceeding." *Id*. In addition, the *Fierro* Court noted that shackles could impair the ability of the defendant to communicate effectively with counsel. *Id*.

The *Tiffany A.* court rejected the People's contention that the *Duran-Fierro* line of reasoning did not apply to juvenile proceedings. *Tiffany A.*, 59 Cal. Rptr. 3d at 375. Although recognizing that juveniles do not enjoy the same panoply of rights as adult criminal defendants, *e.g.*, no right to a jury trial or bail, the court stated that nevertheless, all juvenile proceedings "must contain essentials of due process and fair treatment." *Id*. The court continued, "[T]he constitutional presumption of innocence, the right to present and participate in the defense, the interest in maintaining human dignity and the respect for the entire judicial system, are among these essentials whether the accused is 41 or 14." *Id*. The court also noted the unique nature of juvenile proceedings, including their rehabilitative purpose and that the use of shackles absent an individual showing of need was in direct contravention. *Id*. "Given the rehabilitative objectives of the juvenile justice system," the court concluded, "a juvenile has the same right to an

individual determination of need for the use of shackles as enjoyed by an adult criminal defendant." *Id*.

The North Dakota Supreme Court made a similar finding, relying heavily on *Deck*, where the United States Supreme Court extended its prohibition of routine shackling of adults during the guilt phase of a trial to the penalty phase of a capital case. In *In re R.W.S.*, 728 N.W.2d 326, 328 (N.D. 2007), the juvenile appellant contended the court erred by denying his request to remove the handcuffs during his adjudicatory hearing for burglary, robbery, and disorderly conduct based on the court's reasoning that it had been told by the "presiding judge of the district" that it was a security matter to be determined by the sheriff's office. Specifically, the juvenile contended the court violated his constitutional rights by refusing to remove his handcuffs without making an independent decision as to the necessity of restraints in his case. Recognizing that North Dakota had yet to address the right of either adult defendants or juveniles to appear in court free from physical restraints, the *R.W.S.* court turned to federal precedent, namely *Deck*. *R.W.S.*, 728 N.W.2d at 329 (citing *Deck*, 544 U.S. at 624). In *Deck*, the Supreme Court examined the reasons motivating the constitutional rule applicable to the guilt phase of trial and determined they apply with similar force at the penalty phase, even though "shackles do not undermine the jury's effort to apply that presumption" of innocence because the defendant has already been convicted. *Deck*, 544 U.S. at 632. The *Deck* Court identified three main considerations militating against the routine use of visible physical restraints during a criminal trial: (1) "the criminal process presumes that the defendant is innocent until proved guilty," and visible physical restraints undermine that presumption, suggesting "to the jury that the justice system itself sees a 'need to separate a defendant from the community at large'"; (2) "the Constitution, in order to help the accused secure a meaningful defense, provides him with a right to counsel," and "[s]hackles can interfere with the accused's 'ability to communicate' with his lawyer"; and (3) "judges must seek to maintain a judicial process that is a dignified process" and that dignity "includes the respectful treatment of defendants," and "reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment." *Id.* at 631 (citations omitted). The *Deck* Court then applied these principles within the context of the penalty phase of a trial and concluded that the latter two considerations, securing a meaningful defense and

13

maintaining dignified proceedings, militate against the routine use of visible physical restraints during the penalty phase of a criminal trial. *Id.* at 632-33.

After discussing *Deck*, the *R.W.S.* Court turned to its application to the issue of juvenile shackling. The Court first recognized that with respect to juvenile court proceedings, the concerns as to the effect of visible physical restraints on a jury do not apply; nevertheless, the Court indicated it agreed with other courts' holdings that juveniles have the same rights as adult defendants to be free from physical restraints. *R.W.S.*, 728 N.W.2d at 330. The Court specifically noted the United States Supreme Court's edict in *Gault* that "'neither the Fourteenth Amendment nor the Bill of Rights is for adults alone,'" *R.W.S.*, 728 N.W.2d at 330 (quoting *Gault*, 387 U.S. at 13), and discussed the *Millican* court's reasoning for extending the right against physical restraints to juveniles, which we discuss above. *Accord* N.C. GEN STAT. § 7B-2402.1 (providing that a judge may subject a juvenile to physical restraint in the courtroom only when the judge "finds the restraint to be reasonably necessary to maintain order, prevent the juvenile's escape, or provide for the safety of the courtroom"); *In re Staley*, 364 N.E.2d 72, 74 (Ill. 1977) (extending to juveniles the right to remain free from restraints in nonjury proceedings absent a showing of clear necessity for restraints).

The reasoning in the preceding cases is persuasive, and we are convinced that due process requires that juveniles in Idaho be afforded the same rights as adults to be free from physical restraints at trial, absent a finding of necessity on a case-by-case basis, in the equivalent juvenile proceeding in this State--the evidentiary hearing. Although we acknowledge that some of the concerns underlying the prohibition of routine adult shackling are not relevant in the juvenile context where there is no right to a jury, like the courts discussed above, we recognize there exists ample basis to find that the prohibition of routine shackling of adult defendants at trial, which the Idaho Supreme Court has specifically acknowledged, must extend to juveniles at the evidentiary hearing. For one, as the United States Supreme Court recognized in *Deck*, shackles may interfere with the accused's ability to communicate with his lawyer, *Deck*, 544 U.S. at 631, which is a consideration that is equal to, if not more, pressing in the case of juveniles. *Accord Millican*, 906 P.2d at 860. There is also widespread recognition, from the United States Supreme Court and other jurisdictions, that the use of shackles implicates a judge's duty to "maintain a judicial process that is a dignified process" and which "includes the respectful treatment of defendants," *Deck*, 544 U.S. at 631, a consideration that also applies with,

at the very least, equal force to juveniles. *See Tiffany A.*, 59 Cal. Rptr. 3d at 375. An Illinois Supreme Court Justice further explored this concern:

> [U]nnecessary shackling threatens the dignity of the court. . . . As a court loses its dignity, it loses credibility with the public . . . ; and I further would argue that it loses credibility with the respondent--to the possible detriment of his defense. To do his best at trial, the defendant must have confidence that he is making his case to a rational and impartial trier of fact who genuinely presumes he is innocent until the State proves him to be guilty beyond a reasonable doubt. Unnecessary and unjustified shackling weakens that confidence; it jeopardizes the presumption's value and protection. . . . The presumption of innocence is a noble ideal, but this ideal will inspire little hope if hard iron reminds the defendant, every moment of the trial, how things really are between him and the court--for, plainly, he is not stand[ing] trial with the appearance, dignity, and self-respect of a free and innocent man. . . . In addition to defending himself against the State's evidence, a defendant should not have to struggle with a sense of futility, a disheartening suspicion that he is presumed guilty. Anyone who can sit in chains with no diminution of courage and confidence has a thicker hide than the common run of humanity.

*In re Jonathon C.B.*, 958 N.E.2d 227, 258 (Ill. 2011) (Freeman, J., dissenting) (internal quotations and citation omitted).[9]

We also note that the indiscriminate, routine shackling of juveniles is largely antithetical to key objectives underlying Idaho's juvenile justice system. The establishment of a separate juvenile justice system is based largely on a premise first recognized over one hundred years ago--that children are different than adults and should, therefore be treated differently. John Varin and Sharon Burke, *The Unique Philosophy and History of Juvenile Courts*, 46 THE ADVOCATE, OFFICIAL PUBLICATION OF THE IDAHO STATE BAR, Sept. 2003 at 22. The Idaho Supreme Court long ago discussed these unique purposes and objectives behind the juvenile system in *In re Sharp*, 15 Idaho 120, 126-27, 96 P. 563, 564 (1908), where the appellant argued that the juvenile justice act in effect at the time improperly denied him his constitutional right to, among other things, trial by jury:

---

[9] The point of contention in *In re Jonathon C.B.*, 958 N.E.2d 227 (Ill. 2011), that resulted in dissenting opinions being filed, was not whether juveniles may routinely be restrained. Illinois has long required that, as in adult cases, a juvenile may not be kept in restraints during court proceedings unless a court determines there is a manifest need for such restraints. *In re Staley*, 364 N.E.2d 72, 73-74 (Ill. 1977).

[T]his statute is clearly not a criminal or penal statute in its nature. Its purpose is rather to prevent minors under the age of sixteen from prosecution and conviction on charges of misdemeanors, and in that respect to relieve them from the odium of criminal prosecutions and punishments. Its object is to confer a benefit both upon the child and the community in the way of surrounding the child with better and more elevating influences, and of educating and training him in the direction of good citizenship, and thereby saving him to society and adding a good and useful citizen to the community. This, too, is done for the minor at a time when he is not entitled, either by natural law or the laws of the land, to his absolute freedom,--but rather at a time when he is subject to the restraint and custody of either a natural guardian or a legally constituted and appointed guardian to whom he owes obedience and subjection. Under this law the state, for the time being, assumes to discharge the parental duty and to direct his custody and assume his restraint.

The Court recognized that the legislature could not deny any citizen the constitutional right to trial by jury, but the fallacy in the appellant's argument was that he had, in fact, been "tried by the court for any offense" when he was adjudicated pursuant to the juvenile justice system. *Id.*

Even after the Idaho Legislature enacted the current J.C.A.[10] in 1995 in response to concerns that the existing juvenile system was "too soft" on juvenile law violators, Idaho's juvenile courts continue to be structured differently than adult criminal courts. John Varin, *The Juvenile Corrections Act: Its Birthday and Challenges*, 48 THE ADVOCATE, OFFICIAL PUBLICATION OF THE IDAHO STATE BAR, Oct. 2005 at 15. For example, a delinquent juvenile is "adjudicated" of a crime, not "convicted." I.C. § 20-502(13). The taking of a juvenile into custody is not deemed an arrest, I.C. § 20-516(2), and juveniles do not have the right to trial by jury, I.C. § 20-519, or to bail, I.C. § 20-516. The J.C.A. also provides for limited access to certain juvenile records and the closing of juvenile court proceedings to protect the juvenile

---

[10] The Juvenile Corrections Act prescribes a balanced approach, the primary purpose of which is "to provide a continuum of programs which emphasize the juvenile offender's accountability for his actions while assisting him in the development of skills necessary to function effectively and positively in the community in a manner consistent with public safety." Idaho Code § 20-501. The legislature further indicated that the services and programs utilized in juvenile corrections "will individualize treatment and control of the juvenile offender for the benefit of the juvenile offender and the protection of society" and indicated that a key guiding principle of the system is to "[s]trengthen opportunities for the juvenile offender's development of competency and life skills by expanding the juvenile offender's access to applicable programs and community resources." *Id.*

offender--differences that allow the juvenile the opportunity to leave the process without a criminal record. I.C. § 20-525.

It is a strain to see how routine shackling of juveniles at the evidentiary hearing is compatible with the distinct characteristics of the juvenile justice system. On one hand, our Supreme Court has held that juveniles are not entitled to a jury trial because they are not considered as being "tried" for a criminal offense, but yet, under our current practice, juveniles have *lesser* protections than adult criminal defendants in regard to the use of shackles merely on the basis that a jury is not present. In addition, the juvenile system utilizes modified procedures in furtherance of its objectives to, among other things, "relieve [juveniles] from the odium of criminal prosecutions and punishment," *Sharp*, 15 Idaho at 126-27, 96 P. at 564, and "assist[] him in the development of skills necessary to function effectively and positively in the community," I.C. § 20-501; yet in Idaho, juveniles may apparently be subjected to the indignity of shackling without the need to show any justification. The *Tiffany A.* court pointed out a similar dichotomy in that state:

> [T]he rationale of the California cases--that the Constitution does not require juveniles to have the full complement of rights afforded adult defendants because to do so would introduce a tone of criminality into juvenile proceedings--would not be served by requiring all juveniles, irrespective of the charges against them, or their conduct in custody, to wear shackles during all court proceedings. The use of shackles in a courtroom absent a case-by-case, individual showing of need creates the very tone of criminality juvenile proceedings were intended to avoid.

*Tiffany A.*, 59 Cal. Rptr. 3d at 375; *accord Millican*, 906 P.2d at 860 ("[E]xtending the right to remain unshackled during juvenile proceedings is consonant with the rehabilitative purposes of Oregon's juvenile justice system."); *see also Jonathon C.B.*, 958 N.E.2d at 263-64 (Burke, J., dissenting) ("[I]t is disingenuous for the majority to say that juvenile proceedings 'are administered in the spirit of humane concern' [to support its conclusion that they are not tantamount to a criminal trial] and at the same time find that leaving a minor shackled throughout his trial does not constitute error.").

It is also noteworthy that in discussing the use of physical restraints on adult criminal defendants, Idaho courts have made clear the extraordinary nature of their use:

> [A] decision whether to restrain a defendant requires close judicial scrutiny in weighing the State's interest against the prejudice to the defendant. *See Estelle*, 425 U.S. at 503-04. This imposes an initial burden on the court to determine both the facts supporting the use of restraints and whether the situation could be

17

resolved in another manner, as the use of restraints should be exercised only as a *last resort*. *Allen*, 397 U.S. at 344; *see also Gonzalez v. Pliler*, 341 F.3d 897, 900, 902 (9th Cir. 2003) (stating "the court must pursue less restrictive alternatives before imposing physical restraints" and that "it is the duty of the trial court, not correctional officers, to make the affirmative determination."). It is only in *extreme and exceptional cases*, where the safe custody of the prisoner and the peace of the tribunal imperatively demand, that restraints should be used. *Deck*, 544 U.S. at 626-27.

*Wright*, 153 Idaho at 487, 283 P.3d at 804 (emphasis added).

Given these considerations, we are convinced that, at the very least, juvenile defendants are entitled to the same protections against routine shackling as adult defendants in Idaho and so hold. This means that, as we outlined in *Wright*, the use of restraints in a juvenile evidentiary hearing constitutes error unless the trial court makes a finding that the restraints are necessary in the case of a specific juvenile for physical security, to prevent escape, or to maintain courtroom decorum. *Id.* at 484, 283 P.3d at 801. We discussed in *Wright* the requisite procedure in making this determination in the adult criminal context, which we now extend to juvenile evidentiary hearings:

A finding that restraints are necessary may be based on both formally offered evidence admitted at trial and knowledge gained from law enforcement officers or official records. *State v. Knutson*, 121 Idaho 101, 105, 822 P.2d 998, 1002 (Ct. App. 1991). "Although the sheriff has some initial responsibility for determining whether an accused should be handcuffed during a jury trial, the trial judge must, in fulfilling his duty to preside over the trial, decide the question for himself." *Moen*, 94 Idaho at 479, 491 P.2d at 860. The information relied upon to support restraining a defendant should be shown on the record, outside the presence of the jury, and "the defendant should be afforded reasonable opportunity to meet that information." *Id.* at 480, 491 P.2d at 861. Providing such a record allows an appellate court to determine whether the trial court properly exercised its discretion. *Id.* When determining whether physically restraining a defendant is necessary, it is preferred that a hearing is conducted, with sworn testimony and the defendant present, except in cases where the trial process is disrupted in the court's presence. *Id.* at 479-80, 491 P.2d at 860–61; *see also Crawford*, 99 Idaho at 98, 577 P.2d at 1146 (holding the use of restraints after an ex parte hearing with the State violated the defendant's due process rights to a fair trial). However, where a trial court fails to hold a hearing, or does not specifically state the reasons for placing a defendant in restraints, we will not find an abuse of discretion so long as the record sufficiently justifies the order to restrain the defendant in a manner that would not be prejudicial. *Moen*, 94 Idaho at 480, 491 P.2d at 861; *Knutson*, 121 Idaho at 106, 822 P.2d at 1003.

18

*Wright*, 153 Idaho at 484-85, 283 P.3d at 801-02.

We take care to note that our decision does not extend to the length argued by Doe--that due process prohibits routine shackling of juveniles in *any* juvenile proceeding, including the preliminary hearing at issue in this case. Although we do not dispute the rationality of such an argument, and indeed, strongly suggest that inquiry into the propriety of such a practice, and the extent to which it occurs in Idaho, would be a worthy undertaking by the Juvenile Rules Advisory Committee of this State,[11] we cannot say that such a prohibition is *required* by due process. Neither the United States Supreme Court nor the Idaho Supreme Court have held that due process prohibits routine shackling of adults in preliminary proceedings,[12] and thus, to adopt Doe's argument in this regard would require us to forge entirely new ground without basis in the existing law of this State. As Doe notes, such a rule was adopted in *Tiffany A.*, 59 Cal. Rptr. 3d at 375, but a key distinction lies in the fact that the California Supreme Court had previously held that even as to preliminary hearings, there must be "some showing" of necessity for the use of shackles on adults, *Fierro*, 821 P.2d at 1322. No such precedent exists in Idaho; thus, our holding is limited to the evidentiary hearing context.

---

[11] One need not think long to realize the indignities inherent in the use of physical restraints on juveniles during any proceeding. Recently, an Illinois Supreme Court Justice summarized findings on the ill effects that, logically, would extend beyond the evidentiary hearing:

> Scholars recognize that unnecessarily shackling children causes not only physical harm from restraints designed for adults, but also psychological harm. The routine and indiscriminate imposition of shackles on children may exacerbate feelings of isolation, hopelessness, and insecurity (Anita Nabha, *Shuffling to Justice: Why Children Should Not Be Shackled in Court*, 73 BROOK. L. REV. 1549, 1575-80 (2008)), and causes needless humiliation and trauma (Brian D. Gallagher & John C. Lore III, *Shackling Children in Juvenile Court: The Growing Debate, Recent Trends and the Way to Protect Everyone's Interest*, 12 U.C. DAVIS J. JUV. L. & POL'Y 453, 460-62 (2008)). These enhanced psychological harms significantly burden shackled children in exercising their constitutional right to the assistance of counsel. Bernard P. Perlmutter, *"Unchain The Children": Gault, Therapeutic Jurisprudence, and Shackling*, 9 BARRY L. REV. 1, 37 (2007).

*Jonathon C.B.*, 958 N.E.2d at 258-59 (Freeman, J., dissenting).

[12] In *Deck*, 544 U.S. at 624, the United States Supreme Court did expand the prohibition against routine shackling to a sentencing proceeding; however, this holding was in the context of a capital case, where a jury is utilized at sentencing.

The State contends that even if we find error in regard to Doe's shackling, it was harmless. *See State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). We need not reach this issue, however, because not only were Doe's shackles removed for his evidentiary hearing, but as he concedes, the shackling issue is moot since he has completed his sentence.

## B. Sufficiency of the Evidence

Doe also contends there was insufficient evidence to support a finding that he had the requisite intent required under the malicious injury to property statute. Specifically, he contends the evidence indicates he had "cathartic intent" in overturning the refrigerator rather than malicious intent as the statute requires.

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Doe*, 144 Idaho 796, 798, 172 P.3d 551, 553 (Ct. App. 2007); *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Doe*, 144 Idaho at 798, 172 P.3d at 553; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Doe*, 144 Idaho at 798, 172 P.3d at 553; *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

The State alleged Doe violated the malicious injury to property statute, Idaho Code § 18-7001, which provides, in relevant part that "every person who maliciously injures or destroys any real or personal property not his own . . . is guilty of a misdemeanor." As used in this section, "maliciously" means an intent to damage property without a lawful excuse for doing so. *See State v. Nastoff*, 124 Idaho 667, 670, 862 P.2d 1089, 1092 (Ct. App. 1993) (holding that culpability for malicious injury to property exists when the defendant's injurious conduct is accompanied by an intent to injure the property of another).

Doe argues that his act of pushing over the refrigerator was a "provoked, cathartic redirection of aggression" and cites to a dissent in a Washington state case (discussing the

cathartic nature of victim impact statements) for the proposition that the intent to commit a cathartic act necessarily means there was no intent to do wrong. The district court rejected this argument on intermediate appeal, noting that individuals who intend to do wrongful acts, whether cathartic or not, have violated section 18-7001.

Both the district court and Doe misperceive the requisite intent. As we note above, the requisite intent is not an intent to do wrong, but an intent to damage the property of another without a lawful excuse. Nonetheless, where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory. *State v. Pierce*, 107 Idaho 96, 102, 685 P.2d 837, 843 (Ct. App. 1984). Here, even if we assume that Doe was indeed motivated by desire to avoid striking another person, there was substantial evidence presented upon which a reasonable jury could conclude he *also* intended to damage the refrigerator: the group home employee testified that Doe said he pushed over the refrigerator "out of rage" and the responding officer testified that Doe admitted to pushing over the refrigerator in anger and, although Doe admitted he knew what he did was wrong, "he thought it was better to push over the refrigerator than hurt somebody." Doe cites no convincing authority (or indeed any authority on point) that an act undertaken for cathartic purposes may not *also* be ascribed malicious intent and/or that cathartic intent necessarily comprises a lawful excuse. Indeed, the negative consequences were we to adopt such a holding are not difficult to imagine. The district court did not err by determining there was sufficient evidence that Doe possessed the requisite malicious intent when overturning the refrigerator.

### III.

### CONCLUSION

Because a mootness exception applies, we address the merits of Doe's contention that his due process rights were violated by the magistrate's failure to hold a hearing and make individualized findings regarding whether he must remain shackled at the preliminary hearing. Upon examination of the issue, we determine that the prohibition of routine shackling of adults at trial, based on the Due Process Clauses of both the United States and Idaho Constitutions, extends to juveniles at the evidentiary hearing. However, because the shackling issue is moot as to Doe, and we affirm the district court's determination that there was sufficient evidence to support the magistrate's finding that Doe had the requisite malicious intent in overturning the

refrigerator, the district court's decision affirming the magistrate's order that Doe committed malicious injury to property, bringing him under the purview of the J.C.A., is affirmed.

Judge LANSING **CONCURS.**

Judge MELANSON, **DISSENTING IN PART**

The majority opinion holds that the use of physical restraints during juvenile evidentiary hearings violates due process absent a case-by-case finding of necessity. I respectfully dissent from that part of the opinion. I do so with some reluctance because I believe that the reasons advanced by the majority in support of its ruling are sound as a matter of policy. I agree, for example, that prohibiting the routine use of physical restraints allows juvenile defendants to face the court with the appearance, dignity, and self-respect of a free and innocent person. *See State ex rel. Juvenile Dep't of Multnomah Cnty. v. Millican*, 906 P.2d 857, 859 (Or. Ct. App. 1995). Further, I agree that restraints are something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold. *See People v. Duran*, 545 P.2d 1322, 1327 (Cal. 1976). I do not deny that the use of restraints is contrary to the rehabilitative objectives of the juvenile justice system. *See Tiffany A. v. Superior Court*, 59 Cal. Rptr. 3d 363, 375-76 (Cal. Ct. App. 2007). I recognize that, in some cases, restraints might interfere with a defendant's ability to communicate with counsel.[1] *See Deck v. Missouri*, 544 U.S. 622, 631 (2005). Finally, it cannot be denied that juveniles are different from adults and should be treated differently. *See* John Varin and Sharon Burke, *The Unique Philosophy and History of Juvenile Courts*, 46 THE ADVOCATE, OFFICIAL PUBLICATION OF THE IDAHO STATE BAR, Sept. 2003 at 22-24. I think there are many good reasons to prohibit routine shackling of juveniles in evidentiary hearings but the Constitution is not one of them. In my view, the use of restraints without a case-by-case determination of necessity in juvenile cases does not amount to a violation of due process because there is nothing about the use of restraints in *nonjury* proceedings that deprives the defendant of a fair trial.

Except in the context of jury trials and the penalty phase in capital cases (jury proceedings), neither the Idaho Appellate Courts nor the United States Supreme Court have

---

[1]    Apparently some kinds of restraints may interfere with a defendant's ability to communicate with counsel. This implicates Fifth and Fourteenth Amendment issues which would be alleviated by the use of restraints that do not impede the ability to communicate with counsel.

recognized a constitutional right to be free from restraints while appearing in court. *See Deck*, 544 U.S. at 631; *State v. Wright*, 153 Idaho 478, 484, 283 P.3d 795, 801 (Ct. App. 2012). Notably, those cases prohibit the routine use of *visible* restraints in *jury* proceedings. Plainly, the chief harm prevented by prohibiting visible restraints in jury cases is possible juror bias which would deprive the defendant of a fair trial--a due process violation. I respect the view of the majority and I concede that appellate courts in other states have found a due process violation in the use of restraints at juvenile evidentiary hearings and other nonjury hearings. We need not do so. By finding a constitutional right in this case, the majority needlessly opens the door to claims that the Constitution prohibits the routine use of restraints in *all* court appearances in adult and juvenile cases because many of the reasons cited by the majority in support of its ruling apply to all defendants in all proceedings. After all, it cannot be denied that adult and juvenile defendants at all stages of the proceedings (at least until a determination of guilt) should be entitled to face the court with the appearance, dignity, and self-respect of a free and innocent person and, in every case, restraints are something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold even when restraints are entirely justified. Furthermore, it is not too much of a stretch to say that the routine use of restraints may be contrary to the rehabilitative goals of both juvenile and adult proceedings.

In my view, the Constitution does not prohibit the routine use of restraints in juvenile evidentiary hearings. The use of restraints in juvenile cases should be prohibited, but such should be accomplished by rule or statute. Therefore, I respectfully dissent. I fully concur with the remainder of the majority opinion.